IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 1 6 2019
CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| JEREMY FARMER, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | NO. 4:18-CV-851-A |
| § | |
| TURN KEY INSTALLATION, LLC, § | |
| ET AL., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendants Turn Key Installation, LLC ("Turn Key"), and Matthew Chayer ("Chayer") (together "defendants") for summary judgment.[1] The court, having considered the motion, the response of plaintiff, Jeremy Farmer, the reply, the record, and applicable authorities, finds that the motion should be granted.

I.

### Plaintiff's Claims

The operative pleading is plaintiff's second amended complaint filed June 13, 2019. Doc.[2] 32. In it, plaintiff alleges:

Plaintiff was hired by defendants to help build conveyor systems and to supervise other persons. Doc. 32, ¶12. He was

---

[1]These are the only remaining defendants in the action, plaintiff's claims against defendant Bradlee Hager having been dismissed by separate final judgment signed January 10, 2019.

[2]The "Doc.___" reference is to the number of the item on the docket in this action.

employed from approximately December 2017 to March 2018. Id. ¶ 13. Plaintiff was hired as an independent contractor but came to believe that he should have been classified as an employee. Id. ¶¶ 15, 17.[3] He complained numerous times in March 2018 that the employment status of various employees was improper. Id. ¶ 18. On or about March 28, 2018, plaintiff contacted an attorney to inquire about his misclassification status. Minutes after he got off the phone, his supervisor asked him what he was doing and plaintiff told him. The supervisor stepped away to make a phone call and returned to tell plaintiff to join the call. He was told by Chayer that he was being terminated as they no longer needed his services. Id. ¶ 19.

Plaintiff asserts a claim for interference and retaliation under the Fair Labor Standards Act, 29 U.S.C. §§ 201-19 ("FLSA").

II.

Ground of the Motion

Defendants urge one ground in support of their motion. The say that plaintiff cannot establish a genuine issue of material fact as to a causal link or pretext for his firing. Doc. 33.

---

[3]There is no paragraph 16 in the second amended complaint.

III.

Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party

as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[4] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Undisputed Facts

The summary judgment record establishes the following

---

[4] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

4

undisputed facts:

Chayer is one of the owners of Turn Key, which is in the business of performing industrial installations across the country. Doc. 35 at App. 11. In December 2017, Turn Key hired plaintiff as a steel laborer. Id. Shortly thereafter, he became a crew leader supervising a small team. Id.; Doc. 43 at Appx. 032. As such, plaintiff was required to make sure his team was on task and performing the job safely and adequately. Doc. 43 at Appx. 032.

Plaintiff was hired as an independent contractor, but was told by Brad Hager, the other owner of Turn Key, that he would eventually become an employee. Doc. 43 at Appx. 033. Plaintiff recruited other workers, passing on information he had received from Hager "that the goal was to become employees rather than independent contractors and to eventually receive health insurance benefits." Id. After a period of time, some of the workers expressed concern about the classification issue, so plaintiff discussed the issue with Scott Leo ("Leo"), whom he understood oversaw human resources issues. Leo told plaintiff that there was not a plan to make him and other workers employees and that it was too expensive to have insurance for all the laborers. Plaintiff also spoke with Chayer "about our employee status" on about four occasions, asking Chayer when they were

going to be considered employees. Id. He also complained to Chayer about drug use and workers being off task. Id. at Appx. 033-34. When plaintiff complained to Chayer about these and other issues, Chayer would brush off his concerns. Id. at Appx. 033.

Defendants had issues with plaintiff's attitude and behavior toward other workers. Doc. 35 at App. 11. Plaintiff talked down to other workers, treated them disrespectfully, and acted overly aggressive toward them. Id. Chayer discussed these issues with plaintiff on several occasions and told him his behavior was unacceptable. Plaintiff's behavior did not change and complaints from other workers became increasingly frequent. Id. at App. 12. Plaintiff yelled at workers for not doing jobs properly and created arguments by yelling during end-of-the-day meetings. Doc. 43 at Appx. 040. Workers complained about plaintiff and at least 6 or 7 expressed that they did not want to work with him. Doc. 35 at App. 3. Plaintiff had a very negative attitude and was condescending and aggressive toward other workers, causing one of them to believe that he had anger problems and a bad temper. Id. at App. 5. Another noted that plaintiff frequently started arguments with other workers and on several instances kicked or threw his hard hat. Id. at App. 10. His attitude had a negative impact on the overall job and performance and morale of other workers. Id. at App. 3. One of them described plaintiff's

attitude as toxic. Id. at App. 7. Chayer made the decision to terminate plaintiff because of his repeated attitude problems and inappropriate behavior toward other workers, which was affecting their overall morale and performance. Id. at App. 12.

One of Turn Key's policies was that workers could only use their phones during designated breaks and lunch times. Doc. 43 at Appx. 023. For a first offense, a worker would be sent home for the remainder of the day without pay; for a second offense, the worker would be terminated. Id. at Appx. 023, 026. On March 28, 2018, plaintiff contacted an attorneys' office to inquire about his "rights on the independent contractor misclassification issue." Id. at Appx. 033. About ten minutes later, his foreman asked what he was doing and plaintiff told him. Shortly thereafter, plaintiff was asked to take a call with Leo and Chayer. Leo told him that he was being terminated because "they no longer needed [his] services." Id.

V.

Analysis

To establish a retaliation claim under the FLSA, plaintiff must make a prima facie showing of (1) participation in a protected activity under the FLSA, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse employment action. Starnes v. Wallace, 849 F.3d 627,

7

631-32 (5th Cir. 2017); Carmack v. Park Cities Healthcare, LLC, 321 F. Supp. 3d 689, 705 (N.D. Tex. 2018). If plaintiff establishes a prima facie case, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. If defendants make that showing, the burden shifts back to plaintiff to show that the stated reason is a pretext for retaliation. Starnes, 849 F.3d at 632.

Defendants assume for the sake of argument that plaintiff could make out a prima facie showing of retaliation, although they do not agree that he can. They argue that he was fired because of his attitude and overall negative impact on other workers on the project. The burden is thus on plaintiff to show that retaliation was the "but for" cause of his termination. Carmack, 321 F. Supp. 3d at 705. In other words, plaintiff must show that defendants' proffered explanation for his termination is unworthy of credence and that retaliation is the true reason. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

In response to the motion, plaintiff points to the fact that he was terminated shortly after making a phone call to an attorneys' office.[5] Temporal proximity alone, however, is

---

[5]Plaintiff describes the phone call as pertaining to "the independent contractor misclassification issue," but he nowhere describes what that means. He never says that he told defendants he was
(continued...)

insufficient to establish a fact issue as to pretext once an employer has provided a non-retaliatory reason. Aryain v. Wal-Mart Stores Tex. L.P., 534 F.3d 473, 487 (5th Cir. 2008); Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007). In this case, plaintiff has not shown that he complained of not being paid overtime or being denied benefits to which he was entitled. Rather, plaintiff only communicated with defendants about wanting to be an employee so that he could be eligible for overtime, health insurance, and other benefits. See Doc. 43 at Appx. 033. Moreover, he has not come forward with any evidence that Chayer, the decision-maker, was aware of any protected activity in which plaintiff engaged. See Price v. United Way, No. 4:18-CV-057-A, 2019 WL 267178, at *4 (N.D. Tex. Jan. 18, 2019); Sprouse-Hudson v. Donahoe, No. 4:11-CV-470-A, 2012 WL 5359774, at *7 (N.D. Tex. Oct. 31, 2012). Finally, although plaintiff may disagree with defendants' perception of him as a bad co-worker, even an incorrect belief is enough to support a termination. Martin v. J.A.M. Distrib. Co., 674 F. Supp. 2d 822, 837 (E.D. Tex. 2009). Plaintiff has not shown that defendants' reason for his termination was not worthy of belief.

---

[5](...continued)
misclassified, but only that he wanted to be an employee.

VI.

Order

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his claims against defendants; and that such claims be, and are hereby, dismissed with prejudice.

SIGNED July 16, 2019.

_____
JOHN McBRYDE
United States District Judge